IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DON WALTON,

    **Plaintiff,**

vs.                                                    No. CIV 04-00236 RB/WDS

TESUQUE PUEBLO, *et al.*,

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' ("Tesuque") motion to dismiss pursuant to Federal Rules of Civil Procedure Rule 12(b)(1) for lack of subject matter jurisdiction. (Def.'s Mot. to Dismiss ¶ 1.) The Court exercises jurisdiction under 28 U.S.C. § 1331. Having reviewed the submissions of the parties and the relevant law, I will **DENY** Tesuque's motion to dismiss.

### I. Background.

Don Walton, a non-Indian citizen of the United States, received a vendor's permit from Tesuque Pueblo ("Tesuque"), a federally recognized Indian tribe, to sell wooden products at a booth in the Tesuque Pueblo Flea Market ("Market") during the 2003-2004 year. (Compl. ¶ 9.) The Market is a business venture wholly owned by the Tesuque tribe and is located on the thirty square mile Tesuque Reservation just outside of Santa Fe. (Compl. ¶ 3.) The Management, the administrative body that operates the Market and enforces its regulations, charged Mr. Walton with violating the Market's Rules and Regulations. (Pl.'s Ex. A.) The Market evicted Mr. Walton for "racism to a fellow vendor" on May 18, 2003. (Pl.'s Ex. B.) The Rules and Regulations grant evicted vendors a right to apply in writing within seven days of eviction for a



hearing before Management. (Pl.'s Ex. A §IV.) Vendors may then appeal an adverse decision by Management to The Pueblo of Tesuque Tribal Court ("Tribal Court"). *Id.*

Although Mr. Walton never applied for a hearing before Management he filed a complaint in the Tribal Court on August 12, 2003 for 1) declaratory judgment; 2) injunctive relief; 3) defamation; 4) breach of contract, lease or license; 5) deprivation of property without due process; 6) tortious interference with beneficial business relationship; 7) deprivation of liberty without due process/writ of habeas; and 8) prima facie tort. (Defs.' Mem. of Law in Supp. of Pueblo Defs.' Mot. to Dismiss Pl.'s Compl. and Pet. for *Habeas Corpus* Ex. 2.) He then applied for a TRO to enjoin his eviction from the Market on August 15, 2003. *Id.* Tesuque filed a motion to dismiss for Failure to State a Claim and Assertion of the Defense of Tribal Sovereign Immunity on September 2, 2003. (Defs.' Mem. of Law in Supp. of Pueblo Defs.' Mot. to Dismiss Pl.'s Compl. and Pet. for *Habeas Corpus* Ex. 3 at 2.) The Tribal Court conducted a preliminary hearing on the motion to dismiss on September 30, 2003, but ordered the parties to brief the issues presented and present oral arguments on January 7, 2004. *Id.* Meanwhile, the Tribal Council, a legislative body of the tribe, approved "Resolution #10/102-1022," which stated:

> The Pueblo of Tesuque Tribal Council hereby establishes that the Pueblo possesses and enjoys sovereign immunity and has not waived it by Resolution, tribal law, or any other lawful authority or document. The tribe asserts that sovereign immunity bars the suit pending in tribal court captioned Walton v. Tesuque Pueblo, Case No. CV-03-137.

(Pl.'s Ex. C.)

2

Subsequently, on February 13, 2004 the Tribal Court issued an opinion and order in which the Tribal Court granted Tesuque's motion to dismiss for Failure to State a Claim and Assertion of the Defense of Tribal Sovereign Immunity and denied Plaintiff's petition for a TRO without ever reaching the merits of the case. (Defs.' Mem. of Law in Supp. of Pueblo Defs.' Mot. to Dismiss Pl.'s Compl. and Pet. for *Habeas Corpus* Ex. 3 at 3, 13.) Mr. Walton filed an application for an appeal with The Pueblo of Tesuque Court of Appeals on February 23, 2004 and that court denied his appeal without ever conducting a hearing. (Defs.' Mem. of Law in Supp. of Pueblo Defs.' Mot. to Dismiss Pl.'s Compl. and Pet. for *Habeas Corpus* Ex. 4.)

On March 3, 2004, Mr. Walton filed a complaint in this Court for 1) writ of habeas corpus; 2) injunctive relief; 3) deprivation of liberty and property; 4) breach of contract; 5) defamation; 6) tortious interference in beneficial relationship; and 7) prima facie tort. (Compl. ¶ 12.) Tesuque filed a motion to dismiss Mr. Walton's claims for lack of subject matter jurisdiction based on sovereign immunity. (Defs.' Mot. to Dismiss ¶ 1.) Mr. Walton contends that despite Tesuque's assertion of sovereign immunity this Court has subject matter jurisdiction over his claims pursuant to the Indian Civil Rights Act of 1968 ("ICRA") and the Indian Self Determination and Education Assistance Act ("ISDA").

## II. Analysis.

### A. Standard of review.

In ruling on a motion to dismiss, the court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the non-moving party. *See Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). In accepting the complaint's allegations as true, the court must consider whether the complaint, standing alone, is legally sufficient to state a claim upon which relief may be granted. *See*

3

*Ordinance 59 Ass'n v. United States Dep't of Interior Sec'y*, 163 F.3d 1150, 1152 (10th Cir. 1998). Where a party challenges the facts upon which subject matter jurisdiction depends pursuant to Rule 12(b)(1): "'[A] district court may not presume the truthfulness of the complaint's factual allegations. [Instead,] [a] court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).'" *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1324 (10th Cir. 2002) (*quoting Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)).

Mr. Walton has moved to convert Tesuque's motion to dismiss into a motion for summary judgment. Reliance on evidence outside the pleadings in addressing a motion to dismiss does not, as a general rule, convert the motion to one for summary judgment under FED.R.CIV. P. 56. *Sizova*, 282 F.3d at 1324; *see, e.g. Jones v. Runyon*, 91 F.3d 1398, 1400 (10th Cir. 1996). Moreover, since the Court will deny Tesuque's motion to dismiss, it is not necessary to convert the motion to dismiss into a motion for summary judgment.

### B. Jurisdiction.

District courts have subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Subject matter jurisdiction is proper, therefore, if Mr. Walton's claims arise under the ICRA or the ISDA.

### C. Sovereign Immunity.

The Supreme Court notes that: "Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). An Indian tribe like Tesuque, therefore, is generally only subject to suit where i) Congress has authorized it; ii) the tribe has unequivocally waived its immunity; or iii) if the cause of action falls under the habeas provision, § 1303, of the

4

ICRA. *See Santa Clara Pueblo*, 436 U.S. at 58; *Ordinance 59 Ass'n v. United States Dep't of Interior Sec'y*, 163 F.3d 1150, 1154 (10th Cir. 1998). The Tenth Circuit, however, recognizes a fourth method by which an Indian tribe may be sued under § 1302 of the ICRA that is often referred to as the *Dry Creek* exception to sovereign immunity. *Dry Creek Lodge, Inc. v. Arapahoe & Shoshone Tribes*, 623 F.3d 682 (10th Cir. 1980). Each of these four methods will be considered in turn.

### 1. *Congressional authorization.*

In that Congress has not authorized a suit against Tesuque in this case, the analysis must proceed to the remaining methods whereby Tesuque can be sued.

### 2. *Waiver under § 450 of the ISDA.*

Although Tesuque has expressed an intent *not* to waive its sovereign immunity (Pl.'s Ex. C), Mr. Walton claims that Tesuque waived its sovereign immunity pursuant to § 450 of the ISDA. (Resp. in Opp'n to Mot. to Dismiss at 5-6.) The ISDA is intended to promote tribal autonomy and self-determination by allowing tribes to operate programs previously operated by the federal government. *Cherokee Nation of Okla. v. Thompson*, 311 F.3d 1054, 1055 (10th Cir. 2002). Under the ISDA, 25 U.S.C. §§ 450-450(n), as amended, both the Secretary of Health and Human Services and the Secretary of the Interior may enter into contracts with Indian tribes ("self-determination contracts") that permit the tribes to administer various programs that the appropriate Secretary would otherwise oversee. *Id.*

Mr. Walton's argument relies on Section 450 f(c)(3)(A), which provides in relevant part:

> Any policy of insurance obtained or provided by the Secretary . . . shall contain a provision that the insurance carrier shall waive any right it may have to *raise as a defense the sovereign immunity of*

5

> *an Indian tribe from suit* . . . . [S]uch wavier shall extend only to claims . . . within the coverage . . . of the policy and *shall not* . . . *otherwise limit the tribe's sovereign immunity* . . . . 25 U.S.C. § 450 f(c)(3)(A) (emphasis added).

Mr. Walton contends that since the Government provides Tesuque with liability insurance, Tesuque can not raise a sovereign immunity defense in this suit. The ISDA, however, only authorizes federal court jurisdiction "for disputes *between [a] tribe and [the] federal government under self-determination contracts.*" *Demontiney v. United States, et al.*, 255 F.3d 801, 813 (9th Cir. 2001) (emphasis added). The ISDA only applies to self-determination contracts between Indian tribes and the United States and does not apply to other contracts or licenses between an American citizen and an Indian tribe. 25 U.S.C. § 450(c)(1). Mr. Walton's contract/license with Tesuque is not a self-determination contract under the ISDA. The ISDA, therefore, does not apply to this dispute. Because the ISDA is inapplicable and Tesuque never unequivocally waived, it can still assert its sovereign immunity defense.

### 3. § 1303 of the ICRA.

The third method the Court can utilize to assert jurisdiction in this case is under § 1303 of the ICRA, which provides that: "The privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe." 25 U.S.C. § 1303. Mr. Walton relies on *Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874 (2d Cir. 1996). In *Poodry,* the Second Circuit held that written tribal orders permanently banishing Plaintiffs from the reservation amounted to a detention sufficient to permit invocation of habeas corpus jurisdiction under the ICRA. *Id.* at 901. The Second Circuit stated that "petitioners must satisfy the jurisdictional prerequisite for habeas review by demonstrating a sufficiently severe potential or actual restraint on liberty." *Id.* Mr. Walton

6

contends that in addition to his eviction from the Market, when he went to the Reservation in July 2003, Tesuque security forcibly removed him and advised that Defendant Silva (one of the individual Defendants) had "permanently banished him from the entire Reservation." (Compl. ¶ 17.)

In response Tesuque offers a letter written by the Governor of the tribe to Mr. Walton's attorney that states: "At no time was Mr. Walton ever banished from the Pueblo of Tesuque by the Tribal Council [the only governmental body vested with the authority to banish] in the form of a letter or Court Order. Mr. Walton may enter the Pueblo . . . and he may patron [sic] the Camel Rock Casino, and he is free to traverse the Pueblo on public roadways and highways." (Defs.' Mem. of Law in Supp. of Pueblo Defs.' Mot. to Dismiss Pl.'s Compl. and Pet. for *Habeas Corpus* Ex. 1.) In addition, Mr. Walton's eviction notice never indicated that he was banished from the Pueblo. (Pl.'s Ex. B.) In *Poodry*, on the other hand, the tribal court issued an order explicitly prohibiting Plaintiffs from entering the reservation. Tesuque provided Mr. Walton with written permission to enter the Pueblo and use its facilities. The revocation of Mr. Walton's vendor's permit and his eviction from the flea market do not constitute banishment under *Poodry* or "detention" under the ICRA. Mr. Walton, therefore, does not allege the significant restraint on liberty necessary for habeas review.

### 4. *The Dry Creek exception.*

The Tenth Circuit outlined a narrow exception to sovereign immunity in *Dry Creek Lodge, Inc. v. Arapahoe & Shoshone Tribes*, 623 F.3d 682 (10th Cir. 1980) that allows a Plaintiff to file a private cause of action under § 1302 of the Indian Civil Rights Act. Section 1302(8) of the ICRA provides that: "No Indian tribe can deny any person within it's jurisdiction life, liberty or *property* without Due Process." 25 U.S.C.A. § 1302(8). Mr. Walton claims that Tesuque

deprived him of a property right (in the vendor's permit issued to him) without due process. To overcome a tribe's assertion of sovereign immunity and enforce their § 1302 rights a Plaintiff must show that i) the dispute involves a non-Indian party; ii) a tribal forum is not available; and iii) the dispute does not involve an internal tribal matter. *Ordinance 59 Ass'n v. U.S. Dep't of the Interior Sec'y*, 163 F.3d 1150, 1156 (10th Cir. 1998).

The inquiry then becomes whether Mr. Walton, a non-Indian party, was afforded a tribal forum in which to adjudicate his claims. *Ordinance 59 Ass'n*, 163 F.3d at 1154. Courts recognize both tribal courts and nonjudicial bodies as appropriate forums to adjudicate the rights created under § 1302 of the ICRA. *Santa Clara Pueblo*, 436 U.S. at 65-66. Mr. Walton could have applied for a hearing before Management of the Market, which is essentially an administrative body, to contest his eviction.

Mr. Walton did file an action in the Tribal Court and an application for appeal in The Pueblo of Tesuque Court of Appeals. The Tribal Council, however, passed a unanimous Resolution dismissing Mr. Walton's case before the Tribal Court ever adjudicated his claims. Afterwards, the Tribal Court dismissed Mr. Walton's case without reaching the merits. The Tribal Court based its ruling on sovereign immunity, which the Resolution stated applied in Mr. Walton's case. The Court of Appeals then denied his appeal.

In applying this narrow exception to sovereign immunity the court in *Dry Creek* found that "[t]here is no [meaningful] forum where [a] dispute can be resolved and the personal and property rights asserted by plaintiffs be considered." *Dry Creek at 684*. The court stated that: "To hold that they have access to no court is to hold that they have constitutional rights but have no remedy." *Id.* at 685. For purposes of Tesuque's motion to dismiss, this Court accepts the facts alleged by Mr. Walton as true and finds that the Resolution and the actions of the tribal

8

courts effectively precluded Mr. Walton from obtaining any relief. Tesuque gave Mr. Walton the right to due process without any available remedy. Mr. Walton, therefore, has satisfied the second prong of the *Dry Creek* exception.

The third prong of the *Dry Creek* exception requires the Court to determine whether this dispute involves an internal tribal matter. Whether the nature of the dispute is internal has been apparent in most cases. *See, e.g., Santa Clara Pueblo*, 436 U.S. at 49 (stating that an action by a member of the Tribe challenging tribal officials on the criteria used to determine tribal membership was inherently internal); *Nero v. Cherokee Nation of Okla.*, 892 F. 2d 1457 (10th Cir. 1989) (finding that suit brought by descendants of slaves owned by Cherokee Indian Nation alleging violation of constitutional and statutory provisions from denial of their right to vote in tribal elections to be an internal matter).

*Dry Creek*, on the other hand, involved an action brought by a non-Indian owned hunting lodge corporation located on land bordering an Indian reservation. *Dry Creek Lodge, Inc.*, 623 F.2d at 684. The lodge owners filed suit against the Indian tribes who blocked the only road from the lodge to the main highway. *Id.* The actions of the tribes prevented Plaintiffs from conducting business, thereby depriving Plaintiffs of their property without due process. *Id.* at 685. The *Dry Creek* court stated that "[t]he reason for the limitations and the references to tribal immunity . . . disappear when the issue relates to a matter outside of internal tribal affairs and when it concerns an issue with a non-Indian." *Id.* The Tenth Circuit held that this violation of the constitutional rights of American citizens did not involve an internal matter. *Id.* at 685.

Mr. Walton's case, similarly, involves an alleged violation of the property rights of a non-Indian without due process. In addition, the Market was open to the public. Non-Indians, like Mr. Walton, were free to obtain vendor's permits to do business in the Market. Management of

9

a flea market that is open to the public does not implicate the essential exercise of sovereignty that the sovereign immunity defense is designed to protect. Although the sovereignty of Indian tribes is well recognized, "the United States has manifested an equally great solicitude that its citizens be protected by the United States from unwarranted intrusions on their personal liberty." *Dry Creek*, 623 F.2d at 685 (internal quotations omitted). For the purpose of Tesuque's motion to dismiss, this Court finds that this dispute does not involve an internal tribal matter. This Court, therefore, finds that Mr. Walton has alleged sufficient facts for the *Dry Creek* exception to apply in this case.

Accepting Mr. Walton's allegations as true for the purposes of Tesuque's Rule 12(b)(1) motion to dismiss, the Court finds that the *Dry Creek* exception to sovereign immunity could apply in this case. The Court, therefore, has subject matter jurisdiction over this dispute.

**IT IS ORDERED** that Defendants' motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is hereby **DENIED**.

_____
ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE